ROBERT S. BUTLER, Appellant, v. CITY OF DES MOINES et al., Appellee.

No. 42629.

FEBRUARY 12, 1935.

REHEARING DENIED JUNE 21, 1935.

Parrish, Cohen, Guthrie & Watters and Maxwell A. O'Brien, for appellant.

F. T. Van Liew, C. I. McNutt and J. A. Ralls, for appellee.

POWERS, J.—Substantially, the only question presented on this appeal is one of fact. Was the value placed upon plaintiff's property for the purposes of taxation excessive and out of proportion to the value placed upon similar property in the same taxing district?

Before attempting to answer this question, attention should be called to the fact that the statutes of this state provide for an assessor whose duty it is to assess property within his taxing district for the purposes of taxation at its actual value. The law presumes that every public officer does his duty. There is a presumption, therefore, at the outset, that the valuation placed by the assessor upon the property involved in this case for the purposes of taxation was proper, and that presumption loses none of its force on account of the fact that objections were made to the assessment before the board of review and the board of review overruled such objections. The presumption is that the values arrived at by all taxing authorities are just and equitable, and the burden is on the plaintiff to show the contrary. Sioux City Bridge Co. v. Board, 192 Iowa 1224, 184 N. W. 733. The land and buildings were valued separately. The value placed by the assessor on the land will be first considered.

I. It appeared in the case, without dispute, that the assessor obtained what he thought was the actual value and then took 60 per cent of that for entry in the tax rolls as actual value for assessment purposes. (25 per cent of the 60 per cent was then taken to arrive at the value to which the millage levy should apply.) This was done uniformly throughout the city, and no objection is made to that method of procedure. To avoid confusion, the values herein referred to as having been placed on the property by the assessor are the values shown on the tax roles as the actual values, which are 60 per cent of what the assessor considered to be the actual values.

The evidence before the district court was, quite naturally, in conflict. The deputy assessor testified that the staff of the assessor's office, consisting of the assessor and his deputies, made a special study and investigation of values of property in the business district in Des Moines; that they selected what they regarded as the most valuable piece of business property, and used it as the base for the valuation of all other property. It was regarded as the 100 per cent value. Values by quarter blocks were determined from that point on the basis of the percentage of the value of such property to the

value of the base property. This was done after consultation and in co-operation with a committee of business men and citizens of Des Moines who were especially qualified to pass on the question of relative values. The testimony shows that no effort was made to have this committee ascertain values of the various pieces of property in terms of dollars, and the reason given was that it would be difficult to obtain an agreement, but the evidence shows that they did agree upon the percentage of value which the various fractional blocks bore to the value of the base, property, or 100 per cent valued property. This method of assessment had to do only with the land, the buildings on each property being assessed separately. Thereafter the assessor and his deputies determined upon a front-foot value for the base property of $6,500 for the year 1933 on the portion of the lot between the corner and the alley, and a fixed schedule or table was adopted for determining the value of the other portions of the quarter block and of computing the increased value attributable to corner and alley influence.

For the year 1933, the quarter block containing the property, which was established as the 100 per cent valued property, was valued at $725,173. This quarter block is on the northeast corner of the intersection of Walnut street and Seventh street. The plaintiff's property is the quarter of a block at the southeast corner of the intersection of Locust street and Sixth avenue, and its value, as fixed by the assessor, was $342,429. Plaintiff's property is one block east and one block north of the base property, or the highest assessed property, and the difference between the valuation placed on plaintiff's property and the base property, in terms of percentage, as we understand the record, has back of it the judgment of the assessor and his deputies as well as a committee of the citizens of the community qualified by experience to pass upon real estate values. While it is the judgment of the assessor which the statute demands, this court has recognized that it is proper for the assessor to make inquiry and as best he can arrive at and fix values. Burnham v. Barber, 70 Iowa 87, 30 N. W. 20.

Locust street and Walnut street lie parallel to each other and a block apart, and appear to be the principal business streets running east and west through the business district. Locust street is north of Walnut street. They are intersected in the district under examination by Fifth, Sixth, and Seventh streets, Fifth street being on the east side of the district and Seventh street on the west side, with Sixth·

street in between. The numbered streets are sometimes referred to as avenues.

It is proper to consider the value placed on the quarter of a block in controversy in comparison with that placed on other quarter blocks in the same immediate neighborhood, both by the assessor and the witnesses for plaintiff, and for that purpose to identify certain other quarter blocks in the immediate neighborhood. The quarter block immediately west of plaintiff's property at the southwest corner of the intersection of Locust street and Sixth avenue, is known in the record as the Equitable Building site; the quarter of a block just west of that at the southeast corner of the intersection of Seventh street and Locust street is known as the Flynn Building site; the quarter of a block at the northwest corner of the intersection of Locust street and Sixth avenue is known as the Bankers Trust Building site; the quarter of a block at the northeast corner of the intersection of Locust street and Sixth avenue is known as the Des Moines Building site; the quarter of a block at the southwest corner of the intersection of Locust street and Fifth avenue is known as the Crocker Building site; and the quarter of a block just across the alley south of plaintiff's property and at the northeast corner of the intersection of Sixth avenue and Walnut street is known as the old Iowa National Bank Building site.

The plaintiff introduced at the trial three witnesses as to values. They refer to the various quarter blocks by the name of the building which occupies them, and to the plaintiff's property as the site of the Butler Building. Applying the name of the Building to the site, their testimony as to the value of the plaintiff's property and other quarter blocks in the same locality may be briefly summarized as follows:

*Paul Neal*—Butler, $300,000; Crocker, $150,000; Equitable, $400,000; Bankers Trust, $300,000; Flynn, $450,000; Base Property, $600,000; Des Moines Building, $175,000 to $200,000.

*E. J. Nolan*—Butler, $300,000; Crocker $150,000; Equitable, $400,000; Bankers Trust, $300,000; Flynn, $425,000; Des Moines, $200,000.

*J. C. Ferguson*—Butler, $271,700; Equitable, $400,000; Flynn, $450,000.

The *actual values* of these quarter blocks as shown on assessment roll for 1933, are—Butler, $342,429; Crocker, $126,344; Equitable, $368,935; Bankers Trust, $292,182.60; Flynn, $399,495;

Des Moines, $277,146.60; Old Iowa National Bank Building, $509,887; Base Property, $725,173.

An examination of the foregoing summary reveals that plaintiff's only witness who testified to the value of the base property and the plaintiff's property fixed their relative values substantially as the assessor did. The testimony of plaintiff's witnesses, however, increased the valuation of the higher valued properties in the immediate neighborhood of plaintiff's property, and reduced the valuation of plaintiff's property, and thereby increased the differences in actual value more than the difference shown by the assessment rolls. In other words, their testimony tends to increase, rather than diminish, the difference in value which appears on the face of the assessor's returns. All these witnesses, for example, put the value of the Equitable Building site, which is just across the street from plaintiff's property, at $400,000. No attempt is made to explain why there should be a difference of $100,000 between this property and the plaintiff's property, land value alone being considered, when both front on the same side of Locust street and on opposite sides of Sixth avenue. There is evidence in the record that property on the west side of Sixth avenue at this point is more valuable than on the east side, but the assessor gave recognition to that fact. The difference in judgment seems to be limited entirely to the question of degree. Moreover, the plaintiff himself and at least some of his witnesses in their examination indicated that they were determining values by capitalizing the rental income, particularly, the ground floor income. Such a basis of estimating values for taxing purposes naturally impairs the force of their opinion. Under the statute, income is not the only factor to be considered in determining value. Furthermore, the record reveals that the quarter of a block just south of plaintiff's property and at the northeast corner of the intersection of Walnut street and Sixth avenue was valued by the assessor at $509,887. There is no evidence that such valuation is incorrect. It will be noted that this valuation is considerably more than the valuation placed by the assessor on the Butler property in the same block, yet the evidence shows that included in that quarter block is the old Iowa National Bank Building, the ground floor of which has been vacant for some time, and the vacancy in this building is one of the factors which it is urged in argument operates to reduce the value of plaintiff's property. If, however, plaintiff's property is to be reduced in ac-

cordance with the valuation placed on it by his witnesses, the difference in values for assessment purposes between these two quarter blocks with only an alley between them will be even further increased. Moreover, the one valuation in this district which on the face of it makes the valuation on plaintiff's property seem excessive is the valuation placed by the assessor on the quarter block known as the Crocker Building site. This Crocker quarter block is just across the alley east of the plaintiff's property. The assessor fixed the value of plaintiff's property at $342,429 and the Crocker site at $126,344. The witnesses for plaintiff put them at $300,000 and $125,000, respectively. It will be observed that plaintiff's witnesses place the value of the plaintiff's property at more than twice the value of the Crocker Building site, and rather tend to add support to the difference in valuation fixed by the assessor.

What the law seeks in the assessment of property for taxing purposes is equality, and, if in this record the plaintiff has any complaint whatever, it must be because of the assessment of his property at too high a value in proportion to the other property in the taxing district. Hawkeye Portland Cement Co. v. Board of Review, 205 Iowa 161, 217 N. W. 837.

The problem of determining relative values in a situation of this kind is one of the most difficult with which the courts have to contend. There is no such thing as absolute equality in the assessment of property for taxing purposes. What might seem to one qualified person to be the proper difference in valuation between two pieces of property might to another person, equally qualified, seem to be inequitable and unjust. It is the judgment of the assessor which the statute requires in making these assessments. So long as his action is not arbitrary or capricious or so wholly out of line with the actual values as to give rise to the inference that for some reason he has not properly discharged his duty, the assessments made by him and confirmed by the local board of review should not be disturbed by the court. Even plaintiff's own witnesses differ among themselves to some extent as to the value of plaintiff's property and that of other property abutting upon the same street intersection. There is no rule of law by which the plaintiff is entitled to have their judgment, or that of any one of them, or the average of all of them, substituted for the judgment which the statute re-

quires should be exercised by the assessor. It is obvious that, if we were to attempt to change the assessment and reduce the valuation of the plaintiff's property for assessment purposes, as he has requested, we would be producing greater apparent and perhaps actual inequality in the values in this same neighborhood than could possibly have existed previously.

From a reading of this entire record and a comparison of the values placed upon plaintiff's property with other property similarly situated in this taxing district, we cannot say that the presumptions in favor of the correctness of the determination of values by the taxing authorities have been overcome and that the assessment of plaintiff's property is erroneous and excessive and out of proportion to valuations placed on other property in the same taxing district.

II. The assessor determined the actual value of the building on plaintiff's premises at $49,284. It is charged that this is excessive. The building is a three-story building, covers the entire property, and is 132 feet square. It is conceded to be an old building, and the income from it, outside of the ground floor, does not seem to have been substantial. The ground floor, however, seems to have been equipped with new fronts and to have been kept pretty well occupied, although the tenants were not always able to pay their rent. It does not appear, however, that other property owners in the same district had any better success in collecting rent during the same period. The gross income from the building, according to the plaintiff, was $64,990.48 for 1931, $50,403 for 1932, and $17,564.50 for the first six months of 1933. Witnesses for plaintiff put its value at $25,000. Its age seems to have been taken into consideration by the assessor and its value reduced substantially because of depreciation on account of age. There is no evidence as to what value was placed on other buildings of comparable value for taxing purposes. We have, therefore, been given no standard as a basis for comparison. The building affords the only means by which income is obtained from the property, and we are unable to see how the court can determine that a valuation of $49,284 is excessive for a building which, when used in conjunction with the land on which it stands, was capable of producing a gross revenue in the year preceding of $50,403.

On the whole record, we are convinced that the presumption that the taxing authorities fixed proper valuations has not been overcome by the evidence in this case and that the decision of the trial court should be, and it is hereby, affirmed.

ANDERSON, C. J., and KINTZINGER, DONEGAN, PARSONS, and HAMILTON, JJ., concur.