**METROPOLITAN JACOBSON DEVELOPMENT VENTURE and Washington Avenue Venture, Appellants,**

v.

**BOARD OF REVIEW OF the CITY OF DES MOINES, Appellee.**

No. 93–557.

Supreme Court of Iowa.

Nov. 23, 1994.

Rehearing Denied Dec. 20, 1994.

Dennis P. Ogden, Gerard D. Neugent, and Margaret C. Callahan of Belin Harris Lamson McCormick, A Professional Corp., Des Moines, for appellants.

William R. Clark, Jr. of Herrick, Langdon & Langdon, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, ANDREASEN, and TERNUS, JJ.

TERNUS, Justice.

Appellants, Metropolitan Jacobson Development Venture and Washington Avenue Venture, own commercial warehouse properties in the City of Des Moines. They challenged the assessments [1] of these properties as excessive and inequitable. The district court agreed and reduced the assessed values.

The property owners appealed claiming that the reduced assessments are still inequitable because the properties are assessed at a greater percentage of market value than are comparable properties. The Board of

---

1. In this opinion we use the term "assessment" to refer to the tax assessor's determination of value.

Review of the City of Des Moines cross-appealed claiming that the court erred in reducing the 1991 assessed values of the properties.

We agree with the trial court's determination that the 1991 assessed values of these properties are excessive. Because we conclude that a different ratio of assessed to market value should be used to arrive at the assessed values for the subject properties, we modify the assessed values decreed by the trial court. Therefore, we affirm as modified.

## I. *Background Facts and Proceedings.*

Two sets of properties are involved in this case. Metropolitan Jacobson owns a three-building warehouse complex on McDonald Avenue. Because each warehouse was built at a different time, the city assesses and taxes each as a separate parcel. They are known locally as 4121, 4141 and 4161 McDonald Avenue.

The second set of properties consists of two buildings located on East Washington Avenue. They are assessed for tax purposes as one parcel so we refer to them as one property. Washington Avenue Venture owns the East Washington property.

A. *The prior appeals.* The property owners first sought relief from property tax assessments on 4161 McDonald Avenue and the East Washington property in 1986, 1987, and 1988. In these appeals, the property owners claimed that the properties were assessed at more than their market values. They also claimed that the ratio of assessed value to market value was higher for their properties than for comparable properties.

The district court in the earlier case entered a decree establishing fair market values for the subject properties and comparable properties. Based on these findings, the court ordered that the assessed values be reduced. In a subsequent ruling on a post-trial motion, the court further reduced the assessed values by establishing a lower ratio than the one used by the Board. The court of appeals affirmed the district court's deci-

sion. *Metropolitan Jacobson Dev. Venture v. Board of Review,* 476 N.W.2d 726 (Iowa App.1991).

B. *Subsequent assessments.* The 1989 assessments for these properties were completed in April and May of 1989, shortly after the district court's initial decision in the earlier appeals. Despite the court's ruling, the city did not change the assessments on any of the properties to the court-established values.

When the 1989 assessments were appealed to the Board of Review, the city assessor instructed the deputy assessor to reassess the McDonald Avenue properties. The assessor's office then generated its own fair market values rather than using the lower values set by the district court in the prior appeals. It also chose a ratio of assessed value to market value substantially higher than the one used by the court only two months earlier. As a result, the 1989 assessments were significantly higher than the 1988 assessments set by the court.

No effort was made to correct the 1989 assessment on the East Washington property. Thus, the 1989 assessment for this property remained at the original 1988 level that had been found inequitable and excessive.

In 1990, the city assessor assessed the McDonald Avenue properties the same as in 1989. The assessment was raised on the East Washington property in 1990, bringing its assessment to 115.9% of its fair market value as established by the court less than two years earlier.

In 1991, each of the McDonald Avenue properties received a significant increase in assessment. The assessment on the East Washington property remained the same in 1991 as it was in 1990.

C. *Administrative and judicial review of assessments.* The property owners appealed these assessments to the Board of Review.[2] *See* Iowa Code § 441.37 (1993). The Board reduced the 1991 assessment on the Washington Avenue property. The other assessments were not changed.

---

**2.** All assessments were appealed with the exception of the 1990 assessments on 4121 and 4141

McDonald Avenue.

The property owners then appealed to the district court. *See id.* § 441.38. The appeals were consolidated for purposes of trial in the district court. *See id.* §§ 441.38–.39. After hearing evidence, the district court concluded that the fair market values for all the properties remained the same in 1989 through 1991 as they had been in 1988. The court found no change in the physical characteristics of the properties, the tenant mix of the properties or the market conditions for sale or lease of the properties that would justify an increase in market value.

The court also decided that the properties were assessed at a higher percentage of their market value than any of the comparable properties. Consequently, it ordered the assessor to use a percentage no higher than the highest percentage used for any of the comparable properties in each year.

The result of the court's decree was a reduction in the assessed values on all but one of the properties for each year appealed. (The 1989 assessed value of 4121 McDonald Avenue was increased.) The property owners appealed because they thought the assessed values should be even lower by using a smaller ratio of assessed value to market value. The Board cross-appealed because it believed the court should have found an increase in the market values of these properties in 1991.

■ This case was tried in equity. Iowa Code § 441.39 (1993). Therefore, our review is de novo. Iowa R.App.P. 4. We give weight to the trial court's findings of fact but are not bound by them. Iowa R.App.P. 14(f)(7). We are especially deferential to the court's assessment of the credibility of witnesses. *Id.*

II. *Excessive Assessments Claim: Do the 1991 Assessed Values Exceed the 1991 Fair Market Values?*

■ One basis upon which an assessment may be appealed is that "the property is assessed for more than the value authorized by law." Iowa Code § 441.37(1)(b) (1993). The value authorized by law is the "fair and reasonable market value" of the property. *Id.* § 441.21(1)(a), (b). Consequently, an as-

sessment is excessive if it is higher than the market value of the property. *See id.* § 441.37(1)(b). Thus, in deciding whether an assessment is excessive, it is necessary to determine the fair market value of the assessed property.

■ Here the district court found that the market values of the subject properties did not increase in 1991 from the values established by the district court in the first set of appeals. Based on this finding, the district court concluded that the 1991 assessed values, which were higher than the market values, were excessive. The Board cross-appealed this decision.

■ The burden of proof is on the property owner to prove that the assessed value is excessive. Iowa Code § 441.21(3) (1993). If the property owner offers competent evidence from at least two disinterested witnesses that the market value is less than that determined by the assessor, the burden of persuasion shifts to the board of review. *Riso v. Pottawattamie Bd. of Review,* 362 N.W.2d 513, 517–18 (Iowa 1985); Iowa Code § 441.21(3) (1993).

■ The property owners here did not offer the testimony of two disinterested witnesses so the burden remains on the owners to prove that the valuations were excessive. *Post–Newsweek Cable, Inc. v. Board of Review,* 497 N.W.2d 810, 813 (Iowa 1993); *Richards v. Hardin County Bd. of Review,* 393 N.W.2d 148, 150 (Iowa 1986). The property owners are assisted, however, by a presumption arising from the court-established 1988 valuations of the Washington Avenue property and the 4161 McDonald Avenue parcel. "[I]t is presumed that a valuation fixed by the court continues to be the true value of the property in subsequent years" unless a change in value is shown. 16 Eugene McQuillin, *The Law of Municipal Corporations* § 44.111, at 471 (3d ed. rev. 1994). *Cf. Cott v. Board of Review,* 442 N.W.2d 78, 81 (Iowa 1989) (unless the use of property has changed, it is presumed that a classification adjudicated by the court continues).

The same presumption arising from the district court's valuation of all the properties for 1989 and 1990 also helps the property

owners. The Board did not appeal that portion of the district court's decree establishing the 1989 and 1990 market values of the properties. Therefore, in the absence of a proven change in value, we presume that the values of the properties in 1991 remained the same as the valuations fixed by the court for 1989 and 1990.

We now turn to a review of the evidence offered by the property owners and the Board. The evidence is overwhelming that there was no change in the market for warehouse properties that would justify raising the market values of the subject properties in 1991. Additionally, the few physical changes made to the warehouses in 1990 do not support any increases in the 1991 market values of these properties.

We believe the evidence introduced at trial is insufficient to overcome the presumption that the market values of the subject properties remained the same in 1991 as they had been in 1986 through 1990. Therefore, we agree with the district court that the market values of these properties are the values established by the district court in the first appeal. Because the 1991 assessments exceed these market values, we conclude that the property owners carried their burden to prove that the assessed values on these properties were excessive.

III. *Inequitable Assessments Claim: Is the Ratio of Assessed Values to Market Values Fair and Equitable?*

 When a property owner claims an assessment is inequitable, the owner must prove (1) the existence of comparable properties in the taxing district, (2) the market value and assessed value of the comparable properties, (3) the market value and assessed value of the property at issue, and (4) that the owner's property is assessed at a higher proportion of its market value than the ratio of the assessed and market values of the comparable properties. *Riso,* 362 N.W.2d at 517; *Maxwell v. Shivers,* 257 Iowa 575, 579–80, 133 N.W.2d 709, 711 (1965). The record shows that many of the challenged assessments were a higher percentage of market value than were the assessments on the comparable properties relied upon by the parties.

The district court concluded that the subject properties "should be assessed at no higher percentage level than the *highest* percentage assessment of any comparable property not the subject of this appeal." (Emphasis added.) Using this standard, the trial court ordered the assessments be no higher than 83.4% of market value in 1989 and 1990 and no higher than ninety-seven percent in 1991. The property owners argue that full relief from the inequitable assessments can only be attained if the court reduces the assessments on their properties using the *average* ratio of the comparable properties. The average assessed-to-market-values ratio for the comparable properties in 1989 and 1990 was 71.5. In 1991 it was 77.1.

Neither Iowa case law nor the applicable statutes establish an exact method to make an assessment equitable. In a 1916 assessment appeal, the trial court reduced the challenged assessment on a bridge to the average level of the assessments on all real and personal property in the county. *Iowa Cent. Ry. v. Board of Review,* 176 Iowa 131, 134–37, 157 N.W. 731, 732–33 (1916). Neither party disputed this method of adjustment on appeal so our court did not consider that issue.

In the prior appeal of the 1986, 1987, and 1988 assessments of the subject properties, the trial court reduced the inequitable assessments to the level of the most comparable property. *Metropolitan Jacobson,* 476 N.W.2d at 727. Again, this method of adjustment was not challenged on appeal.

Despite the lack of precedent on this point, we are not without guidance in fashioning a remedy for the property owners here. General principles of taxation are helpful.

 Equality is the paramount object that the law seeks to ensure in distributing the burdens of taxation. *Butler v. City of Des Moines,* 219 Iowa 956, 961, 258 N.W. 755, 758 (1935); *Iowa Cent. Ry.,* 176 Iowa at 134, 157 N.W. at 732. Like property within a taxing district must be treated similarly. *Talbott v. City of Des Moines,* 218 Iowa 1397, 1403, 257 N.W. 393, 396 (1934). Therefore, if an assessment is inequitable when compared to similar property in the taxing district, the court must reduce it to an equitable level.

*Call v. Board of Review,* 227 Iowa 1116, 1120, 290 N.W. 109, 110 (1940); *see* Iowa Code § 441.37(1) (1993). The question we must answer is: what is similar or like property for purposes of ensuring equitable assessments? In this case, is it all commercial property in Des Moines, all warehouses in Des Moines or only warehouses in Des Moines that are comparable to the subject properties? [3]

We believe that the equality the law seeks to achieve is broader than simply consistency among properties that are comparable for purposes of valuation. For example, it would not be fair to tax residential properties in one area of Des Moines on eighty percent of their market values and tax higher-priced residential properties on only sixty percent of their market values. Even if comparable residential properties are taxed the same, this system is inequitable because owners of lower-priced homes would bear a disproportionately higher property tax burden.

 Equality in property taxation requires at a minimum equality within a class of property, not just within a representative group of comparable properties chosen by the parties. Therefore, we reject the property owners' efforts to focus solely on the comparable properties to determine an appropriate ratio for calculating assessed value.

Having decided that the term "similar or like property" refers to a class of property rather than the comparable properties used in a particular case, we must now consider whether like property here is all commercial property or only commercial warehouses. Again, we think that the goal of equality requires that we look beyond the ratio of assessed to market value for commercial warehouses alone. We know of no reason that commercial warehouses should be taxed on a lower or higher percentage of their market value than other commercial property. Consequently, we look to all commercial properties in fixing a fair market-to-assessed-value ratio for the subject properties.

The Board introduced evidence of the median [4] ratio of market value to assessed value for all commercial properties in the City of Des Moines for 1989 and 1991. These figures were prepared by the Iowa director of revenue and finance.[5] The director of revenue and finance calculated the ratios for commercial property in Des Moines as 99.1 in 1989 and 90.4 in 1991. We adopt these ratios as fair and equitable percentages to be applied to the market values of the subject properties for purposes of determining their assessed values. *See Newbury Commons Ltd. Partnership v. City of Stamford,* 226 Conn. 92, 626 A.2d 1292, 1297 (1993) (apparently using ratios prepared by the Connecticut office of policy and management); *In re Objection to Real Property Taxes,* 353 N.W.2d 525, 532 (Minn.1984) (relying on ratio studies done by the Minnesota department of revenue).

3. The Iowa property tax statute focuses on classes of property for purposes of establishing assessed values. *See* Iowa Code § 441.21(4)–(6) (1993). Adjustments to valuations in order to equalize assessments among taxing districts are also based on classes. *Id.* §§ 441.48–.49. Additionally, the Iowa statute allowing taxpayers to challenge an assessment as inequitable refers to "other *like* property in the taxing district." *Id.* § 441.37(1)(a) (emphasis added). Neither party claims that the classification system created by the Iowa statute is unconstitutional. *See Bade v. Drachman,* 4 Ariz.App. 55, 417 P.2d 689 (1966) (discussing practice of county assessor in using different percentages for different classes of property). Therefore, we do not consider this issue.

4. The median ratio is the ratio in the middle of all ratios ranked high to low. It is a much more reliable indicator of the general level of assessments than the average ratio. The average or mean ratio is not considered reliable among assessors because one aberrant ratio can skew the average, causing the average to be unrepresentative of the general level of assessments for similar properties.

5. Iowa law requires that the director of revenue and finance determine the level of assessment for each class of property in each county every two years. Iowa Code § 441.47 (1993). The actual value of property in an assessing jurisdiction is determined by the director based on appraisals made by the director's office and based on sales information provided to the director. Iowa Admin.Code r. 701–71.12. Based on this information and any other relevant data, the director calculates the median ratio of actual value to assessed value for each class of property in each jurisdiction. *Id.* This information is then provided to the assessing jurisdiction.

## IV. Summary.

We agree with the district court that the 1991 assessments of the subject properties were excessive. We also concur in the market values placed on these properties by the district court. However, in arriving at assessed values, we use ratios different from those applied by the trial court. We believe that the appropriate ratios are the median ratios of assessed value to market value for all commercial property in Des Moines. These ratios, as calculated by the director of revenue and finance, are 99.1 in 1989 and 90.4 in 1991. We use the 1989 ratio for the 1990 assessments.

In conclusion, we modify the district court's decision by placing the following assessed values on the subject properties:

1. East Washington
 1989 $4,013,550
 1990 $4,013,550
 1991 $3,661,200

2. 4161 McDonald Avenue
 1989 $2,378,400
 1990 $2,378,400
 1991 $2,169,600

3. 4141 McDonald Avenue
 1989 $4,231,473
 1991 $3,859,991

4. 4121 McDonald Avenue
 1989 $2,393,265
 1991 $2,183,160

The district court's decision is affirmed in all other respects. Costs are taxed one-half to appellants and one-half to appellee.

**AFFIRMED AS MODIFIED.**