Sioux City Bridge Company, Appellant, v. Board of Review of Sioux City, Appellee.

**TAXATION:** Presumption in re Assessment. Assessments are presumptively equitable, and will not be set aside on appeal on conflicting evidence, which furnishes fair support for the judgment of the trial court. Evidence held insufficient to overcome the presumption attending the assessment of an interstate bridge.

*Appeal from Woodbury District Court.*—George Jepson, Judge.

October 25, 1921.

Rehearing Denied January 17, 1922.

The assessor fixed the actual value of plaintiff's bridge, or that part of it assessable in Iowa and in the taxing district of Sioux City, at $360,000, and the assessable value at $90,000. The valuation so fixed was as of date of January 1, 1919. The assessment so fixed was confirmed by the board of review. On appeal to the district court from the action of the board of review, the trial court, on September 28, 1920, reduced the actual valuation to $330,000 and the taxable value to $82,500, for the years 1919 and 1920. Plaintiff has appealed from the judgment of the district court, and claims that there should have been a further reduction.—*Affirmed.*

*Jepson, Struble & Anderson,* for appellant.

*T. F. Griffin* and *O. T. Naglestad,* for appellee.

PRESTON, J.—The objections made by appellant before the board of review, which were incorporated in the petition in the district court on appeal, were: First, that the property of the bridge company had been valued at an excessive amount; and second, that the valuation placed upon the property was and is inequitable, and not in proportion to the values placed upon real estate and other property in the taxing district. There appears also to be some controversy as to what part of the bridge is assessable in Iowa and what part in Nebraska. Appellant contends that the part taxable in Iowa is 26 per cent, and that in Nebraska, 74 per cent, the bridge being across the Missouri River. There is evidence as to soundings made shortly before January 1, 1919, for the purpose of determining the channel. But on this question appellee does not seriously dispute appellant's claim, and we shall not go into any detail on that subject. It is conceded by appellant that the courts are reluctant to disturb values fixed by taxing authorities, and that there is a presumption that the values so fixed are equitable, and that a complaining owner has the burden of overcoming such presumption, and to establish the injustice or inequity of the assessment. We have so held. *Benson v. Town of LeClaire*, 185 Iowa 506, 508; *Frost v. Board of Review*, 114 Iowa 103; *First Nat. Bank v. City Council*, 136 Iowa 203, 208; *King v. Parker*, 73 Iowa 757. Appellants also state the rule in such cases, quoting from *People v. St. Louis Elec. B. Co.*, 290 Ill. 307 (125 N. W. 280, as appellant cites it, but we assume that 125 N. E. 280 is meant), that:

"The board was required to exercise its judgment in the matter, and a mere difference in judgment will not authorize a court to set aside an assessment. Here there was not only an entire absence of proof to sustain the assessment, but the evidence shows an over-valuation so excessive as to require the conclusion that it did not arise from an error in the exercise of honest judgment, but was arbitrarily and intentionally made; and from such an assessment the courts will give relief."

And further, that courts will not give relief against an assessment on account of mere difference of opinion, but where it is manifest that the assessment is grossly excessive, and is a result of the exercise of the will, but not of the judgment, relief

will be granted. In the case cited, the judgment was held to be excessive, where a commission of engineers appraised a bridge, and fixed its value at $2,600,000. 30 per cent of the bridge was in Illinois, and the taxing authorities fixed the value of that part of the bridge at more than a million and a half, or nearly double what the 30 per cent of the entire value was.

Appellant also cites *Iowa Cent. R. Co. v. Board of Review,* 176 Iowa 131. In that case, the court said that it was shown in the record that neither the assessor nor the board of review knew anything of the value of such property, and that it was necessary to take into consideration the facts and data in tables submitted by the railway.

It is contended by appellant that, in the instant case, the valuation was a mere guess by the assessor and by the district court, and that the record presents such a glaring error of judgment and shows such an inequality that a reduction to the amount contended for by appellant is demanded. We shall see in a moment from the evidence that, unlike the *Iowa Cent. R. Co.* case, the authorities did know about such matters; and, as said in the *Benson* case, supra, no great inequality has been shown, and there is nothing to indicate that the taxing authorities did not proceed according to their best judgment, in fixing the value. In short, there is a conflict in the evidence, and the finding of the district court has substantial support in the evidence. The argument of appellant is based on the assumption that the original cost of the bridge is conclusive as a basis for the assessment, and that there is no evidence in the record to the contrary. But we shall see from the evidence that the court could have found the value substantially as fixed by it. It is difficult sometimes to fix the value with exactness. There are comparatively few bridges of this character, and their values are not the subject of as frequent discussion or consideration as lands, horses, and the like.

1. Appellant summarizes some of the facts which it claims are not in controversy, substantially as follows: The bridge company is incorporated, with outstanding stock amounting to $943,763, and the property owned by it is the bridge in controversy. The bridge is of stone and steel, and was built in 1888, at a cost, including approaches and one mile of track on the

Iowa side, of $1,022,355.28. From the time the bridge was opened for traffic until 1907, the revenue consisted of tolls, and varied, depending upon the amount of traffic; but in one year during that period, the tolls amounted to $230,000. In 1907, the bridge company leased the bridge to the Burlington Railway Company, and in 1910, a lease was made to the Omaha Railway Company; and appellant contends that since that time these railroads have been the only users of the bridge, and that the only revenue was the rental under the leases, which was an 8 per cent return upon the original investment, or approximately $81,000 per annum, of which amount the Omaha Railway Company pays approximately five eighths, and the Burlington Railway Company about three eighths of said rentals. Mr. Gray, who fixed the valuation of this property, January 1, 1919, has been the assessor for 14 years, and first started to assess this bridge property in 1909, when the assessment was fixed at an amount somewhat lower than in this case. About one mile of track leading to the Iowa approach of the bridge has been assessed by the state executive council as railroad property, at about $60,000. We do not understand that this last named amount was included in the assessment fixed by the trial court, or that appellee claims that it should not be deducted.

Going back a moment to the cost of the bridge, it is conceded that there is a variance. The bookkeeper for the Northwestern Railway system and for the bridge company says that the variance between his books and the engineer's records is because the cost and improvement of some part of the approaches were charged as operating expenses, while the engineer's department charged it as original cost.

Appellant says in argument that the questions in dispute, and over which there is some controversy in the record, are in regard to the value of the bridge property, and whether the assessment appealed from was equitable, and in proportion to the values placed upon other property in the district. Appellant thus concedes, it seems to us, that there is a conflict in the evidence. Without going into too much detail, we shall set out some of the evidence, or enough to show a conflict.

Mr. Gray, the assessor, testifying for appellant, says that he considered $360,000 to be the full value of the bridge prop-

erty in Iowa. Would not say that he ever took the full value. Fluctuations in real estate make assessed values look unequal. Property sells for more than it is worth sometimes. Assessments are not made in any district for the true value, or the selling price. Made a personal investigation of this bridge property, viewing it personally, on a great many days. Thinks he has a better idea as to the value of such property than anyone, excepting a civil engineer. Used a record he had from the officers of the company, as a part basis for his values. During all the years, has made an effort to fix the actual value of this property, as compared with other property, and made frequent investigations regarding it. Representatives of the company assisted him at different times, and he took their figures and statements into consideration. Knew the cost of the bridge, and considered that, like everything else. · Fixed the value in proportion to other real estate in the district, to the best of his knowledge. Made this assessment according to the information he could obtain. During the years he has been assessor, has made it a point to ascertain the value of all kinds of property. Knew that, in prior years, the bridge revenue was derived from tolls, and that one year it was $230,000. The bridge property was not then worth that exorbitant return. The toll rentals fluctuated some. When the assessment in question was made, he had been told that the revenue was a rental revenue from the railroads of about $81,000 per year. When a thing is in its infancy, and the city and surroundings are sparsely settled, would consider the value less than when it builds up. As a city grows, the farms are occupied, and naturally the trade that would go over the bridge or come to the bridge would make it more valuable. During the years up to 1919, there has been constant increase in the population of Sioux City and of the territory tributary thereto. The tonnage carried across this bridge from year to year, up to 1919, has been constantly increasing.

This witness, called on behalf of appellee, after appellant had introduced its other witnesses, says that he did not include in the assessment in question the track assessed by the executive council. Lived in Sioux City 30 years, during which time he has been engaged in the real estate and loan business, and has had occasion to examine, investigate, and study the values

of property in Sioux City, both in his private business and as assessor. Has talked with Mr. Polleys, tax commissioner of the Omaha Railway, in connection with bridge assessments; is acquainted with his method of fixing valuations; and has claimed to him that his method might be all right, but that it was unjust as to the result obtained, many times. Many deeds recorded show a consideration far in excess of the actual consideration paid, especially in former years. This is so to a smaller extent since the stamp act. Basing his opinion upon actual knowledge of the true value of property in Sioux City, says that the ratio of 53 per cent, fixed by Mr. Polleys, is not correct; that, at the time of this assessment, the assessed value was not at any time as low as 53 per cent of the true value. Says it was his effort to assess all real property at its actual value, and that he considered that his values were the fair and reasonable values of all property at the time, and that he based a value in exactly the same way upon this bridge property. He then gives the total assessed value of property in Sioux City in 1907 and in 1919, showing an increase. He says he increased the valuation of the bridge in 1919 over what it was in 1907; that the value of real estate from 1907 to 1919 increased 120 per cent, while he increased the value of the bridge property only about 40 per cent. Has investigated the proportion and amount of transportation over the bridge, as between the two railroads using it, and thinks that the tonnage, passenger traffic, etc., carried by the Omaha road would be 80 to 85 per cent of the total, and that of the Burlington about 15 to 20 per cent. He refers to a report of the president and secretary of the bridge company in 1909, showing that under the caption for general expenditures, and recapitulation, total entire line, $945,800, and the Iowa proportion, $424,147, and so on. Witness says he used every means at his disposal to ascertain the correct value of the property, and made the assessment carefully and in proportion to the values placed on other real property within his district; did not necessarily stop at the cost of constructing the bridge. Knew what rentals were. Does not know what the tolls were. Knows that the bridge company does not get the tolls. In the earlier years, when he assessed the property at less than the present assessment, it was his first work in assessing, and he knew less of values than

since, and after investigation. Considers that, when a community grows, a railway company doing business, or any company that has to do with the development of the community, reaps a benefit by increase of its business, equally with the general increase. Prosperity with one means prosperity with the other; and even though it is the same structure, without additional expenditure, it is of more value if it has a larger earning capacity. Witness says, in effect and in substance, that, the lease being substantially between themselves, he does not consider as binding any agreement which they might make with other roads or among themselves,—that is, those who own and control the property and the interlocking companies. He says he knows that the railroads are still charging toll for the transportation of freight and passengers across this bridge.

Plaintiff's engineer, Mr. Darrow, describes the bridge, and says it would be more valuable if it was capable of taking care of modern equipment and heavier traffic; that, if constructed according to present-day ideas, it would be more valuable than the present bridge ever was; that cost of steel and materials has increased since this bridge was built, but that modern processes would probably make the increased cost of the construction of a bridge of this kind now about 25 per cent over what it cost when first erected.

Mr. Gregg, the general bookkeeper for the Northwestern Railway and the appellant, says that the revenue from the bridge property was a great deal more, prior to the making of the leases; that the Northwestern Railway owns one half the stock of the bridge company, and the Omaha railroad the other half. Does not know whether the book records as to original costs are correct,—has no reason to believe otherwise. The only income received from the bridge is the rental under the leases. There is nothing to prevent it from receiving more, if other companies should use the bridge. The revenue from tolls was $230,000 one year, which was high mark, and the lowest was $108,000 per annum.

Mr. Polleys lives in Chicago, and is tax commissioner for the Northwestern Railway and the Omaha company. Witness has also had charge of the tax matters for the Sioux City Bridge Company, as one of the subsidiaries of the Northwestern, since

1915. Made a tabulation of the true value, as compared to the assessed value of property in the taxing district of Sioux City, before and after January 1, 1919, that date being the center. Says that opinion evidence may always be resorted to, and that there are other methods for determining values, but thinks that the method used by him and other tax commissioners, called the assessment ratio, is the better. This method consists in gathering transfers from recorded instruments, usually confined to real estate deeds. Not all deeds are included. A large proportion of the deeds are dollar deeds, but the consideration is indicated by the stamps affixed, plus the amount of stated incumbrance. In making up these tables and estimates, he took the consideration named in the transfers and the amount of stamps attached, in fixing the valuation. If the value thus arrived at looks unreasonable when posted against the assessment, they strike it out. The statements give the number of transfers, the consideration, and so on, and he considers that the statement of the assessor, that the ratio of value fixed for assessment against personal property is the same as against real estate. He figures that the ratio of all property in the district, real and personal, excluding money, would be practically 53 per cent of its true value. He then says:

"Now assuming that the true value of the bridge property in question, properly assessed in the taxing district of Sioux City, is 26 per cent of $1,022,000 (the original cost of the Sioux City bridge) or $265,700, deduct from this the one mile of track assessed by the executive council, $60,000, leaves $205,700, as the true value of the bridge property in Iowa. Applying the ratio of 53 per cent to this amount would leave the taxable value of the bridge property in Iowa at approximately $109,000, instead of $360,000, the amount fixed by the assessor."

One fourth of this would make the assessment, as contended for by appellant, $27,250, instead of the amount fixed by the trial court, $82,500.

Mr. Barlow, living in St. Paul, chief engineer of the Omaha Railway Company, says he is familiar with this bridge and knows that the cost of it, including approaches and one mile of track, was $1,022,355.28; that, in 1918, the value of that portion of the bridge and approach in Nebraska was fixed for

assessment purposes at $700,000. In his opinion, there has been no increase in the value of this bridge. There is no other bridge across the river used for railway purposes now, between the bridge at Blair, 80 miles south, and the bridge at Chamberlain, South Dakota.

One of appellant's witnesses states that, because the bridge is old, the present steel part of the bridge is practically scrapping value only. But it produces an income of $81,000 per year or more. The assessment finally fixed by the trial court, $82,500, just about equals the income.

It may be that we have gone too much into detail. There may be other circumstances not mentioned. Without attempting to point out the conflict between the different witnesses, it is enough to say that a reading of the testimony shows that there is a conflict. We say this because of appellant's contention that there is no dispute in the evidence. The case is triable *de novo*, and is so considered. Without further discussion, we are of opinion that appellant has not met and overcome the burden, and has not sustained the two propositions relied upon by it, as to the value of the property or that the assessment was inequitable.—*Affirmed.*

Evans, C. J., Weaver and De Graff, JJ., concur.