IN RE APPEAL OF MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY.

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, Appellant, v. CITY OF FORT DODGE et al., Appellees.

No. 46159.

September 21, 1943.

D. M. Kelleher, of Fort Dodge, for appellant.

W. J. Mitchell, City Solicitor, Mitchell & Loth, and Maher & Mullen, all of Fort Dodge, for appellees.

Wennerstrum, J.— The litigation that has occasioned this appeal is by reason of the claimed excessive property-tax assessment for the year 1941 of thirteen commercial properties in Fort Dodge, Iowa, owned by the plaintiff company. Upon appeal to the district court from the original valuation assessment made by the assessor, and approved by the board of review with a slight modification as to one property, that court entered a decree reducing the valuation of three of the properties owned by the plaintiff and denied relief as to the other ten properties. The plaintiff has appealed from the decree entered.

The Massachusetts Mutual Life Insurance Company, the appellant herein, asserts that the assessment on these several properties exceeded their actual value; that the assessor failed to take into consideration the market value of the real estate, its productive and earning capacity, past, present, and prospective; that the assessor failed to take into consideration other factors that affected the value of the properties, such as depreciation and obsolescence in the buildings on the several tracts of land; and also failed to reduce the actual value to the assessable value of sixty per cent of the actual value, as required by chapter 249 of the Acts of the Forty-ninth General Assembly. The defense of the City of Fort Dodge and the assessor, appellees

in this court, was that the assessments were justified under the statute providing for the assessment of property at sixty per cent of its actual value.

The properties involved, as previously stated, are all used for commercial purposes, and, with the exception of four, are located on Central Avenue in Fort Dodge, which is the principal business street in that city. The four properties that are not on Central Avenue are within a block of that thoroughfare and are within the main business district. The principal business district on Central Avenue extends from approximately Fifth Street on the west to Twelfth Street on the east, where the business section on Central Avenue terminates.

The number of properties involved, and the evidence presented concerning them, have necessarily resulted in an extensive record. The limitation as to length that necessarily must be placed upon an opinion by this court will not permit an analysis of all the evidence. However, in order to set forth the relative contentions of the litigants and to provide a basis for our conclusions, we shall briefly summarize the evidence presented in regard to these several properties. The names applied to these properties in the record are the names of the last owners, prior to the acquisition of them by the appellant, and will be so referred to in this opinion.

The Stevens property is located on the southwest corner of Twelfth Street and Central Avenue. The front of the property, facing Central Avenue, is approximately forty-one feet in width, and the rear portion is approximately fifteen feet in width. The front portion of the building on this land is three stories high, but the rear of the building is only one story in height. It is an old building and was apparently originally constructed for a store and office building, but the second and third floors were later converted into apartments. Material improvements have been made on this property by the appellant insurance company since it was acquired. The assessor's one hundred per cent valuation of this property was $36,000, with the land valuation placed at $13,600 and the building valuation placed at $22,400. The appellant asserts that the assessable one hundred per cent valuation should be $16,500, and claims that the land is worth $6,500 and the building is worth $10,000.

Appellant's witnesses placed valuations on this property ranging from $20,000 to $22,000. The appellees' witnesses placed their valuation of this property at $30,000. The court approved the assessor's valuation of the land but reduced the value of the building $6,000, thus placing the total valuation at $30,000. The evidence further discloses that the report filed by the appellant insurance company with the Iowa Insurance Commissioner shows that this property was, as of December 1, 1940, valued by the company at $30,000 and carried as an asset of the company at that amount. The property across the street, on the northwest corner of Twelfth Street and Central Avenue, has a frontage of twenty feet. It is wedge-shaped and has a width of approximately forty-five feet in the rear. The Stevens property was assessed at $333 per front foot, while the corner property across the street was assessed at $493 per front foot.

The Schultz store and apartment building was originally included in the appeal proceedings, but due to a subsequent sale, prior to the trial of the appeal in the district court, the valuation of that property was reduced by the court to the amount of the sale price. The appellant does not, in this court, complain of the final valuation placed on the Schultz property. Reference is here made to this property and the valuation placed thereon solely for the purpose of showing the sale price as compared to the assessed valuation. This property is located on First Avenue South. The business properties to the north of the Schultz Building, that face on Central Avenue in the block between Eighth and Ninth Streets, are considered the key properties from the standpoint of valuation of business properties in Fort Dodge. The Schultz property was given a total one hundred per cent valuation by the assessor of $22,667. The appellant claimed an actual value of $12,500. It was sold for $13,500. The appellant's witnesses placed valuations on this property, ranging from $13,000 to $14,000. The appellees' witnesses placed their valuation of this property at $18,500. The court reduced the assessment to $15,667.

The Prusia Building is an eight-story building. Sears Roebuck and Company is the present tenant, but for several years prior to the present lease, which was made in 1936, the property

brought in little or no return to the appellant since its acquisition in 1931. The present rental arrangement with Sears Roebuck and Company provides for a minimum rental of $500 per month and a graduating increase depending upon the amount of merchandise sales by the lessee. The present tenant occupies three stories of the building, with the right to use other portions of it, as necessity may require, for storage purposes. The building is of reinforced construction, fireproof throughout, with solid outside walls twelve to eighteen inches thick. It was originally constructed for use by a retail and wholesale hardware business. In 1936 the appellant company expended over $18,000 in preparing the building for use by the present tenant. At the time the appellant company acquired the building it had invested in the property $82,337.99. Consequently, the appellant company has a capital investment in this property of over $100,000. Apparently, however, the company did not charge the improvement expense made in 1936 to capital investment and in its records the improvement expense is not reflected as a capital investment. It is claimed by witnesses for the appellant that there is no economic use for the upper stories of the building. From 1931 to 1936 it was practically vacant, with little or no income during that period. It is located on the north side of Central Avenue between Sixth and Seventh Streets, and within a block and a half of the city's most valuable corner. The gross rental from the present lease has risen from $6,250 in 1936 to $9,309.55 in 1940, with comparatively little or no upkeep expense on the building. The assessor placed a one hundred per cent valuation on this Prusia property of $97,867. The appellant claims that its actual value is $80,000. Appellant's witnesses placed valuations on it ranging from $50,000 to $75,000. The appellees' witnesses placed their valuation at $100,000. The court confirmed the assessor's valuation of $97,867. In the report of the appellant company filed with the Iowa Insurance Commissioner as of December 31, 1940, the appellant placed a market value of $82,109.99 on this property. It will be observed that the company's market valuation is approximately the same as its acquisition cost.

The Breen Building, which is located on the southwest corner of Sixth Street and Central Avenue, was given an assessed

one hundred per cent valuation by the assessor of $25,733, the land being valued at $13,750 and the building at $11,983. The appellant asserts that the actual value of this property is $12,500. The appellant's witnesses' valuations of this property range from $10,000 to $12,000. The appellees' witnesses gave no testimony as to the valuation of this particular property. The court confirmed the assessor's original valuation and in its findings stated that "much of the value * * * is in land." The valuation placed upon this property in the report made to the Iowa Insurance Commissioner by the appellant insurance company, as of December 31, 1940, was $23,000. The building is old, three stories high, with four apartments on each of the second and third floors. This property has a frontage on Central Avenue of approximately forty-five feet and is approximately seventy-five feet in depth. The gross rentals for 1940 were $3,715, with an operating profit of $1,907.34. The property was acquired by foreclosure by the appellant in June 1932 at a cost of $29,000. The building alone is insured by the appellant at $15,000.

Another Breen property owned by the appellant is located between Tenth and Eleventh Streets on Central Avenue. The assessor placed an actual valuation on this property of $15,667, with a land valuation of $14,000 and a building valuation of $1,667. The appellant claims a one hundred per cent valuation of $8,000 on the entire property. The company's valuation of this property, in its report to the Iowa Insurance Commissioner, is not shown, but the company's records introduced in evidence show that it adjusted its valuation of this property, at the request of the insurance commissioner, to $10,000. Appellant acquired this property in January 1933 at a cost of $16,586.05. Witnesses for the appellant placed a valuation on the property of from $7,000 to $7,500. Appellees' witnesses placed no valuation on this property. The building is old and of frame construction. It was rented at the time of the trial for $65 per month. It is insured by the company for $3,000. The land is assessed on the basis of a valuation of $467 per front foot, which is apparently the same valuation placed on other inside lots in this block on the same side of the street. The court

confirmed and approved the valuation placed on the property by the assessor. The principal contention of the appellant is that the ground value is too high.

Reference is made in the record to the Flaherty property, which is also owned by the appellant. The assessor placed a one hundred per cent valuation on this property of $18,667, with a land valuation of $13,267 and a building valuation of $5,400. The appellant claims that the total actual value should be $12,000. Appellant's witnesses placed valuations upon this property ranging from $12,000 to $14,000, and appellees' witnesses placed their valuation on this property at $17,500. The trial court confirmed the assessment made by the assessor. The record shows that the company has adjusted its valuation on this property, to conform with the requirements of the insurance commissioner, to $19,000. This property is located on the north side of Central Avenue and is the second property east of Eleventh Street. It has a frontage of approximately thirty-six feet and the lot is one hundred forty feet in depth and extends to the alley. The front one hundred feet of this building is a one-story-and-basement building and the rear forty feet is two stories in height but has no basement under this portion of the building. The rear portion of the improvements is used as a warehouse in connection with the store that occupies the front part of this property. A rental of $115 per month is received from the store. The company acquired this property in January 1934, at a cost of $22,051.27. The building is insured by the appellant for $10,000. The land is assessed on the basis of a valuation of $368 per front foot, while the corner property to the east and at the end of the block is assessed at a valuation of $493 per front foot.

The property which is referred to in the record as the Johnson Hotel and garage was acquired by the appellant insurance company in November 1934. The assessor's one hundred per cent assessment on both the hotel and garage was $88,667. The hotel was assessed at $68,000, with the land valued at $10,000 and the improvements at $58,000. The appellant claims that its total value is $60,000, and the appellant's witnesses placed valuations on the hotel property, ranging from $40,000 to $50,000. The appellees' witnesses placed a one hundred per

cent valuation on the hotel property of $75,000. The garage building, which is a part of the entire Johnson property, and which adjoins the hotel, was assessed at $20,667, with a land valuation of $11,334 and a building valuation of $9,333. The appellant claims the property has a valuation of $20,000. Appellant's witnesses placed valuations on the garage property ranging from $20,000 to $30,000. Valuations placed by appellees' witnesses ranged from $23,000 to $24,000. The court did not change the assessor's valuation and confirmed and approved the assessment made by that official. It is shown by the record that in the report filed with the Iowa Insurance Commissioner by the appellant insurance company a valuation was placed by it on the entire Johnson property, both hotel and garage, as of December 31, 1940, of $110,343.35.

The hotel is a three-story building with basement, is located at the southeast corner of First Avenue North and Seventh Street. The hotel has a frontage of sixty feet on Seventh Street and one hundred twenty feet on First Avenue. The garage is located to the south of the hotel and runs from Seventh Street to the alley on the east and also parallels the alley on the south. The garage is eighty feet wide and is one hundred twenty feet in depth. The two properties cover a quarter of a block. The garage is a one-story building, and, according to the record, is apparently well constructed. The property now used as a hotel was first erected in 1914 for use as an automobile-sales establishment. In 1924 the interior was completely reconstructed for use as a hotel. There are fifty-seven guest rooms, of which thirty-eight have baths. The hotel is not one of the first-rate hotels in Fort Dodge. The garage was rented at the time of the trial for $242.50 per month. Although the records as introduced do not show the exact operating profit of the hotel, they do disclose that in 1940 the operating profit of both hotel and garage was $6,201.09. This last figure may not be entirely correct inasmuch as another statement introduced showed an operating profit for the same period of $7,399.09.

Another property owned by the appellant insurance company is referred to in the record as the Early property. This building is located between Tenth and Eleventh Streets on

Central Avenue, is on the south side of the street, has a one hundred-foot frontage and is one hundred forty feet in depth. It is a one-story building with five store fronts. It was built of brick and tile in 1916 or 1917. The east forty feet of the building only extends back eighty feet from the street, leaving sixty feet of area behind it for parking, thus affording access to the building for the loading and delivery of merchandise. The west sixty feet of the building extends to the alley. The assessor placed a one hundred per cent valuation on this property of $64,000, with the land valued at $46,660 and the building at $17,340. The appellant insurance company asserts that the actual value of this property is $35,000. Appellant's witnesses' valuations on this property range from $35,000 to $40,000. The witnesses for the appellees did not place any valuation on it. The trial court did not change the assessment made by the assessor. In its report to the Iowa Insurance Commissioner this particular property is listed in the company's assets, as of December 31, 1940, at a market value of $54,933.24. The company acquired it in 1935 at a cost of $55,537.99. In 1940 one or two of the stores in the building were vacant for a time but later in the year all were rented for a total monthly rental of $500. When the two stores were vacant the rental received amounted to $330 per month. The assessor's land value is on the basis of $467 per square foot, which is apparently the same valuation as placed on other land in the interior of the same block. The appellant's particular contention as to this property is that the land valuation is too high.

The Engeldrum property, which is located on the north side of Central Avenue between Tenth and Eleventh Streets, also belongs to the appellant insurance company and is involved in this appeal. There is a vacant lot on either side of this property. The assessor placed a one hundred per cent valuation upon this property of $62,334, the land being assessed at $18,400 and the building at $43,934. The appellant claims that the valuation should be $55,000. Witnesses for the appellant placed valuations upon it ranging from $40,000 to $50,000, and appellees' witnesses placed a valuation on this particular property of $70,000. The court did not lower the assessment. There is a three-story brick building of fireproof construction on this property. The

lot is approximately forty-nine feet wide and extends one hundred forty feet back to the alley. The ground floor is occupied by a theatre which pays a rental of $350 per month, and a tavern which pays $90 per month. There are eighteen apartments on the two upper floors, each with toilet and bath. The record discloses that the appellant insurance company carries insurance on the building in the amount of $48,500. It is suggested by the testimony of witnesses for the appellees that the theatre rental is too high and that the tavern rental is slightly too low. Appellant complains because the valuation of the ground is considerably higher than the adjoining vacant property but the assessor accounts for this difference in valuation on the basis that the Engeldrum land is improved and forms the basis of income-producing property. The appellant acquired this property in 1936 at a cost of $46,493.61. In the report filed by the appellant insurance company with the Iowa Insurance Commissioner, the valuation of this property, as of December 31, 1940, is carried at the acquisition cost.

One of the Leighton properties involved in this appeal is located on the northwest corner of Eleventh Street and Central Avenue. It has a sixty-foot frontage on Central Avenue and is one hundred forty feet in depth, paralleling Eleventh Street. The assessor placed a one hundred per cent valuation on this property of $65,000, with the land valued at $28,000 and the building at $37,000. Appellant asserts that this property has a one hundred per cent valuation of $35,000, of which $12,000 is placed upon the land and $23,000 upon the building. The appellant's witnesses placed total valuations upon this property which range from $35,000 to $45,000. Appellees' witnesses do not testify as to the value of this property. The appellant insurance company, in its report to the Iowa Insurance Commissioner, shows that this property was carried in its assets at $67,988.85, as of December 31, 1940. It was acquired by the appellant company in 1936 at a cost of $67,928.85. The property, although only a one-story building, was so constructed that it could later carry and have added several additional stories. It is suggested by appellant's witnesses that this property was over-constructed.

Another Leighton property owned by the appellant insurance company is located at 1011 Central Avenue. The assessor placed a one hundred per cent valuation upon it, a one-story store building, of $17,000, with the land valued at $11,667 and the building valued at $5,333. The appellant claims that the proper valuation should be $7,500. Appellant's witnesses placed valuations on this property ranging from $8,000 to $12,000. Appellees' witnesses did not place any valuation on this particular property. The court adhered to the assessment made by the assessor. The assessor valued the ground at $467 per front foot, which is the same valuation as was placed on the Early property which adjoins it on the east and to which property reference has been previously made. This property is approximately twenty-five feet in width and has a depth of one hundred forty feet. The building rents for $75 per month. It was acquired in 1937 by the appellant company by foreclosure at a cost of $13,549.61.

The remaining property which is involved in this appeal is referred to in the record as the Rehder garage building. It is a two-story building located at the northwest corner of First Avenue North and Eighth Street. It has a sixty-foot frontage on First Avenue and is one hundred forty feet in depth on Eighth Street. The assessor placed a one hundred per cent valuation upon this property of $35,600, with the land valued at $9,600, and the building valued at $26,000. The appellant asserts that a proper valuation would be $16,500. Appellant's witnesses placed valuations upon this property ranging from $20,000 to $25,000. The appellees' witnesses valued the property at $35,000. The court in its decree reduced the valuation of the property to $29,600. The garage is not in the best of condition and the court reduced the assessment because of a lower valuation placed on a somewhat similar garage a half block east and across the street. The property is insured by the appellant company for $28,500.

There were many types of evidence presented to the trial court for consideration in the submission of this case and which should also receive our attention upon this appeal. They include the cubic contents of the improvements, the location of the improvements, the ground values as they relate to key prop-

erties set as a basis of comparison for valuation purposes, the type of construction, the age of the buildings and the productivity of income. Other factors which were presented for consideration included estimated reproduction cost of the improvements, estimated depreciation of them, and particularly, equality of assessment based upon comparative valuations. All this evidence should receive the consideration of a trial court and this court in passing upon the question whether properties have been properly assessed. Every piece of information that would be helpful in arriving at a proper valuation justifies consideration by a court. Legislative enactments contemplate that this be done, inasmuch as section 7109, Code of 1939, as amended by section 14, chapter 249, Acts of the Forty-ninth General Assembly provides:

"Except as otherwise expressly provided, all property subject to taxation shall be assessed at sixty (60) per cent of its actual value; and such assessed value shall be entered opposite each item, and shall be the taxable value of such property, and the value at which it shall be listed, and to which the tax rate shall be applied.

"In arriving at said actual value the assessor shall take into consideration its productive and earning capacity, if any, past, present, and prospective, its market value, if any, and all other matters that affect the actual value of the property; and the burden of proof shall be upon any complainant attacking such valuation as excessive, inadequate, or inequitable."

As noted by the prior quoted statute, the burden of proof is placed upon the complaining taxpayer to show that the valuation concerning which complaint is made is excessive or inequitable. In considering whether assessments have been excessive or inequitable, the courts of this state are subject to the long-established rule announced by this court that there is a strong presumption in favor of the valuation fixed by the assessor. Call v. Board of Review, 227 Iowa 1116, 1119, 1120, 290 N. W. 109, and cases there cited.

We are conscious of the fact that the properties under consideration in this appeal are all commercial properties. There

is not always a ready market for this type of property as an investment. This is particularly true when the purchase of such properties would, in some cases, involve a comparatively large outlay of capital.

We are justified in giving consideration to the net rentals received, excluding any capital expenditures made for the improvement of the property. We are also of the opinion that we are justified in giving consideration to the values placed upon these particular properties by the appellant in its report filed with the insurance commissioner of this state. It is true that in cases of certain properties the valuations placed by the company in its report filed with the insurance commissioner are lower than the assessed valuations on the same properties. It should also be kept in mind that valuations placed upon other properties noted in the report to the insurance commissioner filed by the appellant are approximately the same as the acquisition cost. However, the court is not restricted alone in its consideration of the case to this factor.

Complaint is made by the appellant that witnesses for the appellees placed their valuations on future-benefit values and not upon actual sale value. However, it should be kept in mind that the legislature in setting forth the factors that should be considered in ascertaining the actual value stated, in part [Code section 7109]:

"* * * the assessor shall take into consideration its [the property] productive and earning capacity, if any, past, present, and prospective, its market value, if any, and all other matters that affect the actual value of the property * * *."

Our consideration of an appeal in connection with tax-assessment cases must necessarily resolve itself into a study of the facts involved. The mode of assessment and the matters to be considered have been charted for the assessor and reviewing bodies, including the courts, by the legislature. This court has in prior decisions commented upon these factors. The assessment of property for taxation is not an exact science. It is subject to human imperfections. The ultimate goal of perfection in the matter of assessments will probably never be reached, but it is within our responsibility to see that there is

no inequality between taxpayers, taking into consideration all known facts.

We have examined the voluminous record presented regarding the several properties involved and have made a study of the various exhibits presented to the trial court and certified to this court. We are unable, within the limits of this opinion, to make an analysis of each of the properties and to compare them with other properties to which reference has been made in the record. Upon a review of all the evidence and the exhibits presented we have concluded that the trial court reached the proper result and that it should be affirmed.—Affirmed.

All JUSTICES concur.