IOWA BUILDING CORPORATION, Appellee, v. HARRY F. ZIRBEL et al., Appellants.

No. 46773.

FEBRUARY 5, 1946.

F. T. Van Liew, City Solicitor, and Herrick, Sloan & Langdon, of Des Moines, for appellants.

J. R. McManus, of Des Moines, for appellee.

SMITH, J.—Defendants, as a local board of review, over-ruled plaintiff's protest of the 1941 assessment of its real estate situated at the northeast corner of the intersection of Sixth and Grand Avenues in Des Moines. The title of the land is in St. Ambrose Cathedral but plaintiff owns the building thereon (covering the entire lot) and holds a one-hundred-year ground lease requiring it to pay all taxes. The 1941 assessment was $438,380 (actual value), divided $162,000 on land and $276,380 on the building.

Upon appeal the district court reduced the total figure of $438,380 to $403,000—$158,000 on the land and $245,000 on the building. It will be seen this reduction amounted to $35,380, of which $4,000 was on the land and $31,380 on the building. From this decree defendants appeal.

The supervisors of Polk county in 1940 employed a Cleveland, Ohio, company to appraise all Des Moines real estate for taxation purposes. The head of this appraisal company is described by appellants as "a nationally recognized appraiser of real estate."

After the appraisal company established its valuations of the various properties the assessor reduced them all (except in a very few instances) by a blanket cut of ten per cent and the reduced valuations became the "actual values," sixty per cent of which constituted the assessments. That was the method pursued in arriving at the above assessment of plaintiff's property.

The office and store part of the building is L-shaped, fronting on Grand Avenue on the south side, 130.89 feet, and on Sixth Avenue on the west 193.8 feet. The lot is bounded by an alley to its full length on the east side 198.8 feet. The west leg of the L is 26 feet deep east and west; the south leg, 48 feet north and south. The alley is at right angles to Grand Avenue but Sixth Avenue runs slightly east of a right-angle line, resulting in a slightly longer line along the west

side of the premises than along the alley side. For the same reason the property is only 99 feet wide at the north end.

The Des Moines Theater occupies the northeast part of the building and is within the L, being about 93 feet wide at the front or south side, 73 feet wide at the back end, 143 feet north and south, and about 54 feet high. The entrance is from Grand Avenue through a lobby and foyer. The L part of the building is five stories high with stores on the ground floor and offices above. The building was erected in 1918 and 1919.

I. Section 7109, Iowa Code, 1939, as amended, provides that property subject to taxation shall be assessed at sixty per cent of its actual value, and then says:

"In arriving at said actual value the assessor shall take into consideration its productive and earning capacity, if any, past, present, and prospective, its market value, if any, and all other matters that affect the actual value of the property; and the burden of proof shall be upon any complainant attacking such valuation as excessive, inadequate, or inequitable."

Appellants argue that under this statute there is a "strong presumption" in favor of the valuation fixed by the assessor, citing: Butler v. City of Des Moines, 219 Iowa 956, 258 N. W. 755; Bennett v. Board of Review, 234 Iowa 800, 13 N. W. 2d 351; Massachusetts Mut. L. Ins. Co. v. City of Fort Dodge, 233 Iowa 916, 11 N. W. 2d 17; and Corn Belt Theatre Corp. v. Board of Review, 234 Iowa 355, 12 N. W. 2d 820.

We have repeatedly so held. And we have said the trial court does not become an independent assessing tribunal when appeal is taken to it from the action of the local board of review. Bennett v. Board of Review, supra, 234 Iowa 800, 811, 13 N. W. 2d 351; also that relief on appeal will not be given on account of a mere difference of opinion as to valuation. Sioux City Bridge Co. v. Board of Review, 192 Iowa 1224, 184 N. W. 733.

Appellee, however, argues that there is no such thing as a "strong" presumption and that the adjective "strong" adds nothing because, "A presumption is merely a presumption— nothing more." The question is perhaps too technical for

serious discussion as all must agree the presumption is rebuttable and the strength or amount of evidence necessary to overcome it must vary according to the varying facts involved. In any case, by the express provision of the statute, the burden is on the taxpayer who questions the assessment.

II. Appellee earnestly contends that under the facts shown here it must be held that the property was not valued by the assessor and that no presumption ever arose as to the correctness of the assessment; that the record shows the valuations all over the city, as made by the appraisal company, were accepted by the assessor and the board, and a general or "blanket" cut or reduction made in them as a whole, without reference to specific properties, and that neither the assessor nor the board exercised any independent judgment in fixing the valuation of appellee's property. This is equivalent to saying that the usual presumption of the correctness of the assessment is overcome by the evidence.

The trial court found that the head of the appraisal company, "in carrying out the contract of his company with the taxing bodies, made an appraisement of the property referred to herein, and the assessor, as was done in nearly every other appraisement" by the company, "made a blanket reduction of ten per cent of the value placed on this property" by said appraisement "and thereby set up as the 100 per cent or actual value of the property * * * the sum of $162,000 as the land value and $276,380 as the value of the building."

We have made a careful study of the record to ascertain whether this finding has support. The head of the appraisal company testified: That he and his employees and associates established what in their judgment represented one hundred per cent values of all the properties in the city; that the assessor made a blanket cut and reduced these values ten per cent in all cases except a few—"Probably not many * * * I don't believe there would be one per cent."

This testimony is corroborated by that of the only witness who was employed in the city assessor's office at the time the assessment in question was made. We find no contradiction of it. It seems entirely adequate to support the trial court's finding.

Does it justify the further conclusion of the trial court, "that the presumption in favor of the assessor to the effect that as a public official he has properly carried out his duties, has been overcome by the evidence in this case"? While it is the judgment of the assessor which the statute demands, this court has recognized that it is proper for the assessor to make inquiry and as best he can arrive at and fix values. Butler v. City of Des Moines, supra, 219 Iowa 956, 958, 258 N. W. 756, citing Burnham v. Barber, 70 Iowa 87, 30 N. W. 20.

In the Burnham case the board of supervisors had classified property in the county and fixed valuations on the various classes. Prairie lands, whether improved or unimproved, were put in one class. A copy of the classification was furnished each assessor. This court said, at page 89 of 70 Iowa, page 21 of 30 N. W.:

"The board of supervisors has the power and authority to classify for the purposes of taxation * * * But the board has no authority to fix the value of such property. * * * Unimproved prairie land may be classified as such; but, however classified, each description of property must be assessed and valued by the assessor. It is his judgment which the statute demands. * * * It is evident that the assessor did not value the real estate in accordance with his own judgment. He simply adopted the valuation fixed by the board of supervisors; for it cannot be supposed that the improved and unimproved land is of uniform and equal value."

. In the Butler case, supra, it appeared that the staff of the assessor's office, consisting of the assessor and his deputies, "made a special study and investigation of values of property in the business district in Des Moines; that they selected what they regarded as the most valuable piece of business property, and used it as the base for the valuation of all other property." 219 Iowa 956, 957, 258 N. W. 755, 756. Relative values of other properties were then determined after consultation and in co-operation with a committee of businessmen and citizens who were especially qualified. This committee, however, fixed no values in terms of dollars and cents.

It is quite apparent this method was not the equivalent of hiring an appraisal firm, as was done here, to fix values of the various properties, to be adopted subject only to a horizontal ten per cent cut. It is true the appraisal company in the instant case did pursue, in a general way, a method similar to the one adopted by the assessor in the Butler case. But the evidence indicates that the assessor exercised no individual judgment as to the actual value of appellee's property or as to its relative value as compared to that fixed upon the other property in the city.

It is our considered opinion that, while the method pursued by the appraisal company may be and probably is as scientific and as nearly accurate as any other, the result obtained is not entitled to the presumption that attaches to the judgment of the assessor. A blanket cut of ten per cent indicates that the taxing officers considered the total valuations fixed by the appraisal company to be too high (by approximately eleven per cent) but it does not reveal any judgment by them as to the *relative* values of the individual properties. It accepts without question the judgment of the hired appraiser that the fixed values of the various properties (including appellee's) are in proper relation with each other.

Because actual value is not capable of exact ascertainment, being, after all, relative and a matter of opinion, we have repeatedly said that the paramount object is equality in the distribution of the tax burden. Hawkeye Portland Cement Co. v. Board of Review, 205 Iowa 161, 165, 217 N. W. 837.

"* * * even though the assessment is less than the value of the property, if it is inequitable when compared with assessments on similar property, it will be reduced to an equitable basis." Call v. Board of Review, 227 Iowa 1116, 1120, 290 N. W. 109, 110.

The performance of this duty of equalization cannot be delegated by the assessor.

We think the conclusion of the trial court on this branch of the case was correct. We do not condemn the proper use

of an appraisal by an independent expert. Such an appraisal, properly used, might be of great value to the assessor but it should not be substituted for his judgment. When it is, the presumption usually indulged in support of the assessment is overcome.

III. We have still to consider whether under the evidence the trial court should be sustained in making the approximately eight per cent reduction in the assessment made by the assessor and confirmed by appellants. The burden was on appellee to show that the valuation was "excessive * * * or inequitable." Code section 7109.

The statute requires the assessor to take into consideration the productive and earning *capacity* of the property, past, present, and prospective, its market value "and all other matters that affect the actual value." The trial court and this court are bound by this statutory directive. Each is a part of the machinery provided to aid in the proper adjustment of the burden of taxation. Davis v. City of Clinton, 55 Iowa 549, 551, 8 N. W. 423.

The question is technically one of fact but actually one of opinion. A mere statement of the various factors entering into its determination shows that even informed minds might reach widely divergent conclusions. We have said we do not have here the benefit of the independent judgment of the administrative officers charged with the duty of fixing sound and equitable valuations.

But we must weigh the evidence to determine whether the assessment, however arrived at, was "excessive" or "inequitable." The case is triable anew on appeal though weight should be accorded the findings and judgment of the trial court. That court concluded that the one hundred per cent value of the building as fixed in the assessment, was "higher than its actual value * * * and out of proportion with surrounding properties."

We think the record does not support this conclusion. Regardless of the manner in which the assessment was made and without according it the usual presumption of correctness, we are still unable to say it was either excessive or inequitable.

The reduction of the full valuation of the land from $162,-000 to $158,000 was based by the trial court upon the fact that the appraisal company mistakenly assumed the frontage on Grand Avenue to be 134 feet instead of 130.89 feet. But it does not appear that the witnesses for appellants made that error in valuing the entire property. Four of them fixed the combined value of building and ground at $500,000, $487,099, $515,000, and $475,000, respectively. Two others fixed the replacement value of the building, less depreciation and obsolescence, at $254,889 and $315,000, respectively.

On the other hand, the two witnesses for the appellee, who testified to the total value of the entire property, fixed it at $350,000 and $370,000, respectively. But their testimony is materially weakened by the fact that in 1938 they appraised the same property at $523,000 for the purpose of assessment. They now make no claim that values have depreciated since that time but explain the variance between that appraisal and their present testimony by saying their earlier opinion was based on insufficient information and was part of a hurried, wholesale job of appraising, without taking sufficient time either to assemble the necessary facts or to make proper analyses and comparisons. The explanation does not adequately meet the situation or entitle their present testimony to be accepted at face value.

Much other testimony was offered on both sides of matters deemed material as affecting value. There was evidence of numerous sales of other downtown properties, but satisfactory data for comparison of appellee's property with those sold is not in most instances available. Apparently the sales were shown rather for the purpose of demonstrating that the assessments of such properties were in excess of sale prices, thereby discrediting to some extent the appraisal upon which assessment is based.

The question is complicated by reason of the fact that there are really two buildings with different types of construction. The store-and-office part, L-shaped, fronting on Grand and Sixth, is five stories high and cut up into store rooms on the ground floor and offices on the other floors. The theater

part is in the angle of the L, bounded on the south and west by its two legs but with a separate roof. Different rules for estimating cost of reproduction and depreciation and obsolescence apply to the two parts.

Again, the question is complicated by the rental situation. The actual ground rent under the lease, if considered as a basis for estimating separate ground value, is claimed by appellee to be affected by considerations that detract from its value as a basis. There is a suggestion that appellee, as lessee, was especially generous in agreeing to the amount of rent to be paid because of the church ownership of the ground, but we cannot attach much weight to that argument. One witness, at least, argues the fallacy of ascertaining ground value and building value separately because an inadequate building or use might detract from the ground value in reaching a fair estimate of the value of the combination. His point is that value of the ground depends somewhat on the use to which it is put.

The theater rental under the existing lease is $44,000 per annum but lessee owns all the stock of appellee (lessor). The lease therefore can hardly reflect a rental figure arrived at by open bargaining. However, there was much evidence bearing on what would be the reasonable ''earning capacity'' of the theater part of the building and we do not believe the assessment as made depended on the rental figure named in the theater lease. The same is true as to the present rent being realized from the office part of the building, said to be temporarily high because a considerable amount of office space is advantageously rented to the State of Iowa—a situation not likely to be permanent. These are considerations affecting value but we think the assessment, under the record, is sufficiently low to allow for these conditions.

We are reluctant to disagree with the trial court but feel that the decree and findings were influenced unduly by the conclusion that the assessment was based on the appraisal instead of on the independent judgment of the assessor and his deputies. In our judgment the weight of the evidence requires that the assessment be upheld. Accordingly, the

decision is reversed and the case remanded for decree sustaining the assessment.—Reversed and remanded.

HALE, MANTZ, MILLER, and OLIVER, JJ., concur.

BLISS, C. J., and WENNERSTRUM and GARFIELD, JJ., concur in all the foregoing opinion except Division II.